I believe the hearing goes first. I am your honor I'm Donald C. Carroll on behalf of the defendants and appellants of the Board of Trustees of the Southern California IBEW-NECA Pension Trust. I'd like to reserve two minutes please. The basic question here is whether a result that all parties including the trial court feels is exceedingly strange and I contend is absurd is compelled by the plain meaning quote unquote of the words. Well tell us a different way of construing it you know. You guys drafted the language. We did indeed. Whoever drafted that language should be sent back to Mr. Brown for a valuable lesson. Cheaply administered. Because the trustees men on both sides of the bargaining table who feel that they understand the industry felt that the result here was one that they never intended and they found in the language of 9.8C14 the ability to interpret those discrete subsections in a manner that produced a coherent result. Okay why don't you explain it to me. Electrical contractor. I have the language right in front of me. How other than through wishful thinking do you get that to be an employee? You do it through looking at the context of that language and looking at it you will find in addition to talking about an electrical contractor who does things like bidding for work and contracting for work etc. that the parties have also included concepts in there that they are going to treat as an electrical contractor even though they are not typically done by an electrical contractor such as leasing equipment or leasing buildings or seeking work. Well wait a minute wait a minute wait a minute. I built lots of contractors and they always lease equipment. They lease cement trucks. They lease drilling equipment. They lease water pumps. They lease porta-potties. So don't tell me about contractors. You know I paid for all those things so I know that contractors lease equipment. I had eight parties in my house and I had to go pay for them to have a porta-potty. Well fortunately we didn't include that language. Well but it says. You said this is stuff that contractors don't do. But you do. But in fact leasing equipment is at the heart of what contractors do. Well not always. And a person who leases equipment. Well not every contractor does everything that any contractor does. I think you're missing one thing here. It's the individual who does the leasing of the equipment for another for a company. That individual simply because he or she is out there doing the leasing of equipment or property is going to be treated by my clients as a contractor just because they're doing that leasing activity. That's what that's the breadth of this language. And so the language is not capable of being interpreted as the reasonable man would as you just suggested. Trial court as you know went off and looked at the trial court. I'm looking at this language saying look this is somebody who can't be employed as an electrical contractor. Contractor being a guy who's a contractor. Who's a who's a who's a who's an independent contractor. You know we don't even have a term in law. Including and then it lists a bunch of the kind of things that contractors do. I have seen contractors do. I've seen them do every one of those things. There isn't a single thing on here that you would say an employee would do but a contractor wouldn't do. You wouldn't say oh there is something about filling out time sheets. Which you might say well only an employee fills out time sheets or punches time cards. Contractors don't do it. But there isn't a single thing on there that some contractors or normal contractors many of them or most of them don't do. Though that's inconsistent with the terms that are understood. My clients didn't feel that their understanding of the contractor was one who leased buildings or leased equipment. They might do work in leased buildings. Well they're just wrong. Your clients obviously don't have much experience in the business because we all know that contractors lease equipment. You're not going to stand there and tell me different are you? You know you have lots of experience dealing with contractors. Is it your experience that contractors don't lease equipment? Some don't lease equipment. Well of course there are some who don't do electrical work either. No. There are some contractors that just serve in the position of responsible managing employee and they just let them use their license. And the rest of them go out and they get jobs hustling around and they supervise the work and they do labor work. That's right. It covers a lot of things. And my clients were faced with situations. But if you're talking about a There's a discrete subsection, a different one that Judge Krasinski is calling my attention to. It's the first one that talks about an individual holding a C-10 license. C-10 license is the basic license for electrical construction work here in California. Not the only one but it's the basic one. But you can be a contractor without having a C-10 license. You can do electrical contracting work without a C-10 license. My only point is that it's the basic one. It's the most common one. That was the testimony. But that doesn't help you any. No I wasn't suggesting it was. I was simply trying to point out to the judges. You're suggesting it even though it doesn't help you any? No I'm simply trying to be responsible. You're plea for my client's ability to try to determine their own rules in a manner that's coherent. But they can and that's why they have complete control. They can make up the rules. They can draft them. They can revise them. And they did revise them. So there's no one tying your client's hands. But when they come up with language that they have complete 100% unfettered control over and that affects the rights of other people, it seems to me that they're entitled to be held to it. Well I would disagree that it really does some great injustice to Mr. Brown. You will remember under the facts here that Mr. Brown signed some documents when he applied for this early retirement benefit in which he said that he would not engage in this type of activity irrespective of this particular definition without telling us. He didn't do where he found out that he had to be careful that he might lose his job. You know this doesn't help you any. If you want to sue him because he didn't tell you because he breached some sort of other agreement, that's another case. That's another argument. I don't remember any briefing on that issue. So trying to make him out to be a bad guy because he violated some other agreement that he hasn't had a chance to argue about doesn't really help your case any here. If you think you've got some other, if you did something else wrong, then you could have. We're not interested in that. We're just simply interested in that. raising it. You're raising it here and trying to help yourself with this argument. It's not fair. It's not fair to be raising some other violation of some other provision that opposing counsel hasn't had a chance to brief and the district court didn't have a chance to consider. We don't know anything about that. Well, I'm not aware that counsel has asserted that we've raised something that wasn't raised below. What does that have, what bearing does that have on this provision? I'm sorry, Judge. What bearing does that have, the thing you just argued have on, that he did notify, didn't notify? I think there's no injustice to him. We didn't spring something on him that should not have been expected by him. You had suggested to me in your question that we might have been guilty of doing that. And I was simply trying to say, no, I don't believe we haven't done anything that was unfair to him. Well, you're trying to change the terms of the contract after after he. We don't see it that way. And we don't believe we were irrational. And that's the only thing we can plead for here in front of you. I think the term is abusive. Pardon me? I think the term is abusive. Abusive? Abusive discretion, I think is the term. All right. You've got two statements. No, actually, you're into negative numbers. Why don't we see what else there is. Thank you. Your time is up. Thank you. Good morning, Your Honors. John St. John for Mr. Brown. First of all, just in case you were wondering why I've got this beanie on here, I had surgery yesterday. Looks like it was Passover. Yeah, so it was. Anyway, I wanted to address what you said, Judge Parker, and just follow up on that. What surgery did you have? It was a scalp surgery. I had this cancer up here. Oh. The doctor says I can no longer wear visors, you know, because I've got balls, but it's the sun. Sun damage. Oh, yeah. But hopefully it's okay, so. Anyway, I was going to follow up on what you said. We're in the last 14 months been out of our house on a high-speed line. Supposed to have been 10 months, but I've learned a lot about contractors, and there are two kinds of contractors. There are those that work with their hands, the general contractors that work with their hands, and the ones that just arrange for the work, and those are called by my contractor, who works with his hands disparagingly as paper contractors. So it's interesting how, yes, there are different kinds of contractors do different kinds of stuff. Anyway, just I want to briefly address what Council had said about. A lot of them say they're contractors and don't have a license. That is true. That is true. You've got to be careful about that. I want to address briefly what Council had said about Mr. Brown perhaps not being truthful. He should have been aware that he was working for someone in the electrical construction contract industry. Remember, the record shows that he submitted the form in July of 2003, which disclosed that he was working for Siemens. He put on there exactly what he was doing. The only reason why Siemens is deemed to be an electrical contractor is because it has a C10 license. Mr. Brown certainly wasn't aware of that. It has something to do with something, as the record shows, I think they make fire alarm systems and somehow they have a C10 license in connection with that. But it had nothing to do with Mr. Brown. So he was, as he said in the hearing, administrative hearing, he had no idea that Siemens would be considered an electrical contractor. It's basically a manufacturing company. So I don't think he was really trying to get away with something. It was really a surprise to him to find out that the trust considered him to be working for an electrical contractor. But anyway, I want to point out... But anyway, we're not in equity, we're in law. Pardon me? We're not in equity, we're in law. Excuse me, I can't hear you. We are, in any event, we are not in equity. Yes. We are in law. That is correct. I'm always in equity. There is something to that. There is something to that. No, there isn't. But I think it's really important here to understand why... That's why Judge Pregerson is referred to as the Chancellor. That's right. In the Court of Equity. And I wanted to focus on, really, I think it's important here to focus on the sequence of events. How this all unfolded. How could it possibly come to the point where they're considering him to be a contractor? And you start out with back in 2005, the trust sends him this notice. And they said, look, you're going to suspend your benefits for two reasons. One, you're working in what's called suspendable employment. And the other is you're working for a non-union contractor. Well, the suspendable employment thing, that went away pretty quickly because the trust had adopted an amendment in 2003, which is extended suspendable employment. It's working the same geographic area. They had taken that, which is always applied to regular retirees, extended it to early retirees. But that was in 2003, and it was quite clear it didn't apply to Mr. Brown. So then we all focused on this thing about non-union employment. And we had our hearing. Trustees were kind enough to keep the hearing open to see if we could find whether Siemens was, in fact, a party to an IBEW contract somewhere in the United States that caused them to contribute to a likelihood-related plan, meaning a big defined benefit plan like the trust funds. And it took several weeks to find out. Back in New Jersey, there were these three collective bargaining agreements that Siemens has, which does require contributions. That was a surprise to everybody, myself included. I didn't think we'd ever find that, but we did. And the trust verified that, and then, as they said, they agreed in their decision. I said the appeals committee agreed in their decision that, you know, that falls within the likelihood-related plan con yet, and therefore Mr. Brown can't be working in non-union employment. And I think by that time, the train had traveled so far down the track, they had made up their minds that they were going to suspend his benefits and had to find some basis in the plan to do it, so they latched on to the working as a contractor exception. Obviously, he's not working as a contractor. He can't be both a contractor and an employee at the same time. The evidence is quite clear, and they don't dispute the fact that in all periods of time here, he was working as an employee for Siemens. He's never been a contractor. So, I mean, it's just, as I said, I think it's got to the point where they had made up their minds. He gets a normal paycheck. Yes, sure. And they deduct taxes. Oh, yes. And Social Security and all that. Sure. This is W-2, just like every other. But they don't deduct for union. No, he's not a member of the union. Because he's retired. That's correct. Okay. And it's not a union job anyway, right? It's not a union job anyway. He's programming these devices which control heating and air ventilation. Probably got one here in the courtroom that controls air ventilation. Don't combine those. No, we could use them. It might go out of whack if we pass it. So, and again. Actually, this one here works pretty well. Too well, some of my colleagues tell me. I think, you know, the argument that counsel is making is that it's sort of like, well, if you look at 9.8C1 as a whole. I think we got it. You take the spirit of the thing. I think we got it. Okay. Thank you. Thank you very much. The case is signed. You will stand submitted. Well, I'll tell you this about the list of contents.
judges: Kozinski, Pregerson, Mills